IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAMPSKIBSSELSKABET NORDEN A/S ) <br> ) <br> Plaintiff, )     Civ. No. 1:13-cv-_____ <br> vs. ) <br> ) <br> )     **VERIFIED COMPLAINT** <br> GRAND CHINA SHIPPING (HONG KONG) ) <br> CO., LTD; GRAND CHINA LOGISTICS ) <br> HOLDINGS (GROUP) COMPANY ) <br> LIMITED; GRAND CHINA SHIPPING ) <br> (YANTAI) CO., LTD; HNA GROUP CO. LTD., and ) <br> OCEAN CONTAINER TRADING (HONG KONG) ) <br> COMPANY LIMITED, ) <br> ) <br> Defendants. ) | |

Plaintiff, DAMPSKIBSSELSKABET NORDEN A/S (hereinafter "NORDEN A/S" or "Plaintiff") by undersigned counsel, for its Verified Complaint against Defendants: GRAND CHINA SHIPPING (HONG KONG) CO. LTD.; GRAND CHINA LOGISTICS HOLDINGS (GROUP) COMPANY LIMITED; GRAND CHINA SHIPPING (YANTAI) CO. LTD; HNA GROUP CO. LTD.; and OCEAN CONTAINER TRADING (HONG KONG) COMPANY LIMITED alleges and pleads as follows:

## I. JURISDICTION, VENUE, AND PARTIES

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract – *i.e.* an executed charter party for the employment of a seagoing cargo vessel. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and

1

Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2. At all times material hereto, Plaintiff, NORDEN A/S, was and is a corporation organized under the laws of Denmark.

3. At all times material hereto, Defendant GRAND CHINA SHIPPING (HONG KONG) CO. LTD. (hereinafter "GRAND CHINA HONG KONG") was and is a foreign company organized under the laws of a foreign country and the charterer of the M/V NORD YILAN under a charter party dated August 30, 2010.

4. At all times material hereto, Defendant GRAND CHINA LOGISTICS HOLDINGS (GROUP) COMPANY LIMITED (hereinafter "GRAND CHINA LOGISTICS"), was and is a foreign company organized under the laws of the People's Republic of China and the guarantor of the performance of GRAND CHINA HONG KONG under the aforementioned charter party agreement and also a joint and several principal obligor under same pursuant to a written performance guarantee dated August 30, 2010.

5. At all times material hereto, Defendant GRAND CHINA SHIPPING (YANTAI) CO., LTD, (hereinafter "GRAND CHINA YANTAI") was and is a corporate entity organized under the laws of the People's Republic of China engaging in marine transportation business and has registered as a vessel operating carrier with the U.S. Federal Maritime Commission ("FMC") and has filed tariffs, as required by law. *An extract of the online record of the FMC showing GRAND CHINA YANTAI'S registration and tariffs filed are attached hereto as **EXHIBIT 1**.*

6. At all times material hereto, Defendant OCEAN CONTAINER TRADING (HONG KONG) COMPANY LIMITED (hereinafter "OCEAN CONTAINER") was and is a "sub-company" of Defendant GRAND CHINA LOGISTICS, organized under the laws of a

foreign country.

7.     At all times material hereto, Defendant HNA GROUP CO. LTD., (hereinafter "HNA") was and is a corporate entity organized under the laws of the People's Republic of China and the parent company and alter-ego of Defendants: GRAND CHINA HONG KONG; GRAND CHINA LOGISTICS; GRAND CHINA YANTAI; and OCEAN CONTAINER. *See documents attached hereto as **EXHIBIT 2**.*

8.     The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled in Section V of this Verified Complaint.

## II. THE SUBSTANTIVE CLAIMS

### MV NORD YILAN

9.     Plaintiff NORDEN A/S chartered the M/V NORD YILAN pursuant to a time charter party agreement on an amended NYPE form dated February 5, 2007. *A copy of the head charter party agreement is attached hereto as **EXHIBIT 3**.*

10.    On or about August 30, 2010 NORDEN A/S, as disponent owner, sub-chartered the vessel to Defendant GRAND CHINA HONG KONG for a time charter trip for a period starting from delivery on November 22, 2010 and lasting for a minimum term of October 22, 2013 and a maximum term up to December 22, 2013. *A copy of the fixture recap agreement is attached hereto as **EXHIBIT 4**.*

11.    Defendant GRAND CHINA LOGISTICS is the performance guarantor, who is also a joint and several principal obligor under the charter party agreement pursuant to a written

performance guarantee dated August 30, 2010. *A copy of the performance guarantee is attached hereto as **EXHIBIT 5**.*

12.     The charter party agreement for the M/V NORD YILAN is a maritime contract.

13.     The parties' charter party agreement provided for payment of hire at the rate of USD 15,100.00 per day, with payment due every fifteen (15) days in advance.

14.     Plaintiff duly delivered the M/V NORD YILAN to GCL (HK) on November 22, 2010. On or about December 23, 2011, Defendants GRAND CHINA HONG KONG and GRAND CHINA LOGISTICS redelivered the M/V NORD YILAN to Plaintiff, *i.e.* six hundred and sixty-nine (669) days ahead of the earliest scheduled redelivery date of October 22, 2013.

15.     As of February 3, 2012, the outstanding balance of hire due and owing to Plaintiff was **USD 267,469.38**. *A copy of the Hire Statement Recap issued by Plaintiff on February 3, 2012 is attached hereto as **EXHIBIT 6**.*

16.     Pursuant to applicable English law, Defendants' early redelivery is a repudiation of the charter party by Defendants and entitles Plaintiff NORDEN A/S to accept the repudiation and seek damages for the loss of revenue.

17.     Plaintiff is entitled to the daily hire rate for the balance of the period fixture of six hundred and sixty-nine (669) days, less reasonable estimated future hire earnings at an anticipated fair market rate for a similar period. As best as can be estimated at this time, Defendants GRAND CHINA HONG KONG and GRAND CHINA LOGISTICS have caused Plaintiff damages and loss of revenue in an amount of not less than **USD 4,512,405.00**[1] for the remainder of the charter period.

---

[1] Plaintiff's estimated loss of revenue damages are based upon the difference between the net earnings which NORDEN A/S would have earned under the charter party agreement, i.e. USD 14,345 per day (contractual rate of USD 15,100.00, less applicable commission) and the reasonable estimated future net earnings of USD 7,600 per day

4

18. In breach of the terms of the charter agreement, Defendants have refused, neglected, and/or otherwise failed to pay the outstanding principal balance of USD 4,779,874.38 which is due and owing to the Plaintiff.

19. Defendants have failed to comply with their obligation to pay hire according to the terms of the charter party and have failed to remit payment in the amount due and owing to Plaintiff for the M/V NORD YILAN totaling **USD 4,779,874.38**.

20. Plaintiff has duly demanded payment from the Defendants and, in the alternative has sought security from them, both of which Defendants have refused and resisted.

### III. UNDERLYING PROCEEDINGS ON THE MERITS

21. Pursuant to the terms of the charter party agreements, disputes between the parties are to be submitted to arbitration in London with English law to apply.

22. On or about February 10, 2012, Plaintiff commenced arbitration in London in accordance with the terms of the charter party agreement. The Panel has been fully constituted, and Plaintiff will soon be submitting its Claim Submission.

22. This action is an ancillary proceeding, brought in order to obtain jurisdiction over Defendants and to obtain security for Plaintiff's claims in aid of the London arbitration proceeding.

23. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

### IV. DEFENDANTS' CORPORATE IDENTITY

24. Notwithstanding their formal separate incorporation, the Defendants are in actual

---

(fair market rate of USD 8,000.00, less applicable commission). Accordingly, [USD 14,345/day – USD 7,600/day] x 669 days = USD 4,512,405.00.

5

fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of HNA and GRAND CHINA LOGISTICS.

25. HNA's business comprehends the operation of seven (7) distinct business groups: Airlines; Airports; Finance; Logistics; Property; Retail; and Tourism.

26. The Logistics business enterprises of HNA are under the command and control of Defendant Grand China Logistics (Group) Holding Co. Ltd. (*i.e.* GRAND CHINA LOGISTICS), which conducts its business through 26 separate companies it controls.

27. A significant part of the logistics business of GRAND CHINA LOGISTICS is ocean transportation which includes: "container transportation," via its owned and related corporation, Grand China Shipping (Yantai) Co. Ltd (*i.e.* Defendant GRAND CHINA YANTAI); and "dry bulk" cargo transportation via its related corporations Grand China Shipping Co. Ltd. (*i.e.* Defendant GRAND CHINA HONG KONG) and Grand China Shipping Development Co. Ltd. *A diagram of the Logistics business structure and operations operated by GRAND CHINA LOGISTICS is attached hereto as **EXHIBIT 7**.*

28. Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are distinct from one another only as a matter of formality.

29. Defendant GRAND CHINA HONG KONG is owned in its entirety and is under the same ultimate beneficial ownership, management and control as Defendant GRAND CHINA LOGISTICS. *See extract from corporate search investigation report attached hereto as **EXHIBIT 8**.*

30. Defendant GRAND CHINA HONG KONG publicly represents and holds itself

out as a branch of Defendant GRAND CHINA LOGISTICS and GRAND CHINA LOGISTICS, in turn, publicly represents that it owns GRAND CHINA HONG KONG. *See EXHIBIT 8.*

31. GRAND CHINA LOGISTICS is held out by Defendants as "one of the three pillar industries of the Hainan Airlines Group (HNA Group)."

32. Defendant GRAND CHINA YANTAI is owned virtually in its entirety by Defendant GRAND CHINA LOGISTICS, which holds 98.7% percent of its authorized and issued capital shares. *See Declaration of the Deputy General Manager of GRAND CHINA YANTAI hereto attached as EXHIBIT 9*

33. GRAND CHINA YANTAI represents publicly that it is owned and backed up by Defendant HNA Group. *Copies of such representations made from press reports adopted and re-published in the website of the said Defendant are attached hereto as EXHIBIT 10.*

34. Defendant OCEAN CONTAINER is a "sub-company" of Defendant GRAND CHINA LOGISTICS, and it so represents itself and is represented by GRAND CHINA LOGISTICS in the transaction of business. *See copies of container leasing contracts with Beacon Intermodal Leasing LLC hereto attached as EXHIBIT 11.*

35. Although nominally independent of the dominant holding companies of the group, the subsidiary company activities are closely shadowed, supervised and controlled by individuals who are the officers, directors, and employees of the dominant holding companies, *i.e.* Defendants HNA and GRAND CHINA LOGISTICS.

36. Defendants represent themselves as parts of a multi-billion dollar conglomerate business enterprise, however, in actual fact some of them are marginally capitalized. *See EXHIBIT 8 and EXHIBIT 10.*

37. Defendant obligors under the time charter *i.e.* GRAND CHINA HONG KONG

and GRAND CHINA LOGISTICS have been unable to pay the agreed daily charter hire of USD 15,100.00 for M/V NORD YILAN and have now redelivered the M/V NORD YILAN approximately six hundred and sixty-nine (669) days early. It is clear that GRAND CHINA HONG KONG lacks both economic independence and corporate autonomy in order to make its own financial decisions that affect its conduct of business. Instead, such decisions are being made for GRAND CHINA HONG KONG by the holding companies that entirely dominate it, *i.e.* GRAND CHINA LOGISTICS and HNA.

38.   GRAND CHINA HONG KONG is entirely dependent on GRAND CHINA LOGISTICS and HNA to allocate funds in order to meet their hire payment obligations to Plaintiff.

39.   Defendants GRAND CHINA HONG KONG, GRAND CHINA LOGISTICS and HNA have repudiated obligations to several other owners whose vessels the Defendants were employing under time charter, leaving large sums outstanding and unpaid, and unilaterally and prematurely terminating the respective charter parties with substantially unexpired terms.

40.   Similarly, group member GRAND CHINA YANTAI which had operated a containerized liner service between ports of the United States and ports of China (the "SPX" SERVICE) made a public announcement in October 2011 stating that the service was being discontinued. This likely resulted not only in the loss of revenue but may have left Defendants with an obligation to pay charter hire on at least three container-type vessels which were not due to be redelivered until the middle of 2012. *A copy of the announcement is attached hereto as **EXHIBIT 12**.*

41.   Upon information and belief, Defendant GRAND CHINA YANTAI is indebted to various creditors in the United States in connection with its former liner service between ports

of the Far East and the ports of Oakland and Long Beach in amounts approximating USD 7,000,000.00 which remain unpaid.

42. In the conduct of their ocean transport business with chartered-in, non-owned tonnage, Defendants GRAND CHINA LOGISTICS and HNA do not directly contract as charterers with the respective owners, but use other financially weak entities of the Group such as GRAND CHINA HONG KONG, the performance of which they guarantee, but as it has turned out, do not intend to honor such undertakings.

43. Though purporting to be companies separately maintained and operated from one another, in fact, the Defendants have their business and finances commingled and confused.

44. Defendants as a matter of routine practice in their business ventures contract as joint obligors. Thus *e.g.*, Defendant GRAND CHINA LOGISTICS often contracts as joint obligor of GRAND CHINA YANTAI in the leasing of containers. *See copies of container leases attached hereto as **EXHIBIT 13**.*

45. Defendants, as a matter of practice, pay off each other's debts even though there is no contractual obligation whatsoever to do so. By way of example, Defendant OCEAN CONTAINER routinely pays off the container leasing invoices of GRAND CHINA YANTAI and/or GRAND CHINA LOGISTICS. *See Documents hereto attached as **EXHIBIT 14**.*

46. Defendants routinely guarantee the performance of each other's obligations.

47. Defendant companies share a common company logotype which prominently features the initials "HNA"; and in several instances e-mail addresses with the same domain name *i.e.* "hnair.com" and a common internet name server address *i.e.* "ns1.hnair.com" and "ns2.hnair.com". A number of the Internet registrations for the Defendant companies were set up by the same individuals and organization.

48.     At all times material hereto, the structure of the Defendants and their affiliated companies was a complex intertwined web of parent and subsidiary companies over which HNA and GRAND CHINA LOGISTICS exercised virtually absolute dominion and control and constituting the subsidiaries: GRAND CHINA HONG KONG and GRANG CHINA YANTAI their *alter egos*.

49.     On information and belief, OCEAN CONTAINERS is an offshore-jurisdiction type of company, without any business activity of its own, apart from functioning as a corporate persona and an alter ego of GRAND CHINA LOGISTICS.

50.     From discussions held on numerous occasions between representatives of disponent Owners and representatives of Defendants, over the course of the performance of the time charter party, it has become evident to Plaintiff that the Defendants, in actual practice pursued business as a single business entity, confusing and commingling assets, officers, directors, and finances, holding themselves out to the public to be a single business and a "Group," guaranteeing the obligations of each other, and in every respect acting as an integrated single business enterprise.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

51.     None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Attorney Declaration of George M. Chalos attached hereto as* **EXHIBIT 15**. Notwithstanding, the Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, accounts, stocks, shares, loan repayments, accounts

payable, dividends payable, receivable advances, checks, and or payments held or which may be receivable by the said garnishees on behalf of the said Defendants.

52. More particularly, on information and belief, Defendants are believed to have during the pendency of this action, assets within this district and subject to the jurisdiction of this Court, including assets held in the hands of garnishees. Such assets may include, but are not limited to, assets of the Defendants in the hands of Norton Lilly International, Inc., One St. Louis Centre, 5th Floor, 1 St. Louis Street, Mobile, Alabama 36602, and bank accounts maintained by Norton Lilly International, Inc. at Banktrust, 107 St. Francis Street, Mobile, Alabama 36602, or at other financial institutions.

53. As a result of the foregoing, the Defendants have property within the District comprised of assets held by Norton Lilly International, Inc., and bank accounts maintained by Norton Lilly International, Inc.

54. Plaintiff has maritime claims against the Defendants HNA; GRAND CHINA LOGISTICS; GRAND CHINA YANTAI; GRAND CHINA HONG KONG, and OCEAN CONTAINER arising out of the Defendants' breach of the parties' maritime contract.

55. The amount of Plaintiff's claim as reasonably as it can be estimated is as follows:

| | |
|---|---|
| A. MV NORD YILAN ............................................. | $ 4,779,874.38 |
| B. Interest on unpaid sum for 1 year: *calculated at 6% interest, compounded quarterly*............... | $ 293,310.06 |
| C. Recoverable Legal Fees and Costs........................ | $ 200,000.00 |
| **Total Claim**.................................................... | **$ 5,273,184.44** |

56. Therefore, Plaintiff's total claim for breach of the maritime contracts against

Defendants is in the aggregate sum of **USD 5,273,184.44**.[2]

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

 A. That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

 B. That if Defendants cannot be found within this district, then all of their respective property within this district, including assets of the Defendants in the hands of Norton Lilly International, Inc., One St. Louis Centre, 5th Floor, 1 St. Louis Street, Mobile, Alabama 36602, and bank accounts maintained by Norton Lilly International, Inc. at Banktrust, 107 St. Francis Street, Mobile, Alabama 36602, or at other financial institutions, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

 C. That a judgment be entered against the Defendants in the sum of **USD 5,273,184.44** and the proceeds of the assets attached be applied in satisfaction thereof;

 D. That the Court grant such other and further relief as it deems, just, equitable and proper.

---

[2] Plaintiff has two (2) other actions pending against Defendants (in the Southern District of New York (12-cv-00874) and the Central District of California (12-cv-00171). Assets of the Defendants have been attached in the two (2) actions, but the Plaintiff has not fully secured its claim. As best as can be estimated, Plaintiff has attached approximately USD 750,000; however, some of these assets are intangible debts and credits, the precise amount of which is uncertain. Through this action, the Plaintiff is not seeking to attach any amounts beyond its claim amount, taking into account the amounts already attached in other districts.

Dated: January 11, 2013            Respectfully submitted.
       Oyster Bay, New York

CHALOS & CO, P.C.

By:    /s/ George M. Chalos
       George M. Chalos, Esq.
       Fed ID: GC-8693
       *Pro hac vice application forthcoming*
       55 Hamilton Avenue
       Oyster Bay, New York 11771
       Telephone: (516) 714-4300
       Facsimile: (516) 750-9051
       Email: gmc@chaloslaw.com
       *Attorneys for Plaintiff*
       DAMPSKIBSSELSKABET NORDEN A/S

OF COUNSEL:
BRISKMAN &BINION, P.C.
Donald Briskman, Esq.
Fed ID: Brisd9863
ASB: 9863 S73D
205 Church Street
P. O. Box 43, Mobile, Alabama, 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
Email:dbriskman@briskman-binion.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAMPSKIBSSELSKABET NORDEN A/S, | ) | |
| Plaintiff, | ) ) ) | Civ. No. 1:13-cv-_____ |
| vs. | ) ) | |
| | ) ) | **VERIFICATION OF COMPLAINT** |
| GRAND CHINA SHIPPING (HONG KONG) CO., LTD; GRAND CHINA LOGISTICS HOLDINGS (GROUP) COMPANY LIMITED; GRAND CHINA SHIPPING (YANTAI) CO., LTD; HNA GROUP CO. LTD., and OCEAN CONTAINER TRADING (HONG KONG) COMPANY LIMITED, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, declares under the penalty of perjury:

1. I am over nineteen (19) years of age, of sound mind, capable of making this verification and fully competent to testify to all matters stated herein.

2. I am the managing partner of CHALOS &CO, P.C., counsel for the Plaintiff, DAMPSKIBSSELSKABET NORDEN A/S, and fully authorized to make this verification on its behalf.

3. I have read the foregoing Verified Complaint and know the contents thereof; and

4. I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

5.      The reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 11, 2013
      Oyster Bay, New York

Respectfully submitted.

CHALOS & CO, P.C.

By:   /s/ George M. Chalos
George M. Chalos, Esq.
Fed ID: GC-8693
*Pro hac vice application forthcoming*
55 Hamilton Avenue
Oyster Bay, New York 11771
Telephone: (516) 714-4300
Facsimile: (516) 750-9051
Email: gmc@chaloslaw.com
*Attorneys for Plaintiff*
DAMPSKIBSSELSKABET NORDEN A/S

OF COUNSEL:
BRISKMAN & BINION, P.C.
Donald Briskman, Esq.
Fed ID: Brisd9863
ASB: 9863 S73D
205 Church Street
P. O. Box 43, Mobile, Alabama, 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
Email:dbriskman@briskman-binion.com